UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MAVERICK MART, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 14-cv-01165-F |
| | ) | |
| NORTH STAR MUTUAL INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

---

**DEFENDANT NORTH STAR MUTUAL
INSURANCE COMPANY'S *DAUBERT* MOTION
TO STRIKE TOM MILLER'S TESTIMONY, OR
IN THE ALTERNATIVE, SECOND MOTION *IN LIMINE***

---

Respectfully submitted,

Gerard F. Pignato, OBA No. 11473
Erin J. Rooney, OBA No. 31207
PIGNATO, COOPER, KOLKER &
ROBERSON, P.C.
Robinson Renaissance Building
119 North Robinson Avenue, 11th Floor
Oklahoma City, Oklahoma 73102
Telephone:   405-606-3333
Facsimile:   405-606-3334
Email:       jerry@pclaw.org
             erin@pclaw.org
**ATTORNEYS FOR NORTH STAR MUTUAL
  INSURANCE COMPANY**

**Dated: November 30, 2015**

# TABLE OF CONTENTS

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENTS AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

PROPOSITION I: MILLER'S REPORT DOES NOT COMPLY WITH
RULE 26'S DISCLOSURE REQUIREMENTS. . . . . . . . . . . . . . . . . . . . . . . . . 5

       A.      *Prejudice*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

       B.      *Ability to Cure*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

       C.      *Disruption of Trial*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

       D.      *Bad Faith or Willfulness*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

PROPOSITION II:  MILLER'S TESTIMONY IS NOT RELEVANT. . . . . . . . . 15

PROPOSITION III: MILLER'S TESTIMONY DOES NOT MEET THE
*DAUBERT* STANDARD FOR RELIABILITY. . . . . . . . . . *19*

       A.      *Miller's testimony does not satisfy the Four* Daubert *Factors*. . . . 21

       B.      *Miller did not rule out alternative explanations*. . . . . . . . . . . . . . 22

       C.      *Miller did not connect the proposed testimony with the facts
of the case*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

PROPOSITION IV: MILLER'S TESTIMONY SHOULD ALSO BE
EXCLUDED PURSUANT TO FED. R. CIV. P. 403. . . . . . 24

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

<u>TABLE OF AUTHORITIES</u>

## Cases

*Anderson v. Hale*,
    CIV-02-0113-F, 2002 WL 32026151(W.D. Okla. Nov. 4, 2002). . . . . . . . . . . . . 5

*Black v. M&W Gear Co.*,
    269 F.3d 1220 (10th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Cantrell v. Davidson*,
    CIV-07-0623, 2008 WL 8809764 (W.D. Okla. June 23, 2008). . . . . . . . . . . . 20, 23

*Coletti v. Cudd Pressure Control*,
    165 F.3d 767 (10th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6, 16, 20

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    (on remand), 43 F.3d 1311 (9th Cir. 1995), cert denied, 516 U.S. 869 (1995). .  20,
    21

*Dixie Steel Erectors, Inc. v. Grove U.S., L.L.C.*,
    CIV-04-390-F, 2005 WL 3558663 (W.D. Okla. Dec. 29, 2005) .. . . . . 5, 12, 14, 15

*General Electric Co. v. Joiner*,
    522 U.S. 136 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Indiana Ins. Co. v. Hussey Seating Co.*,
    176 F.R.D. 291 (S.D. Ind. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Kumho Tire, Co., Ltd. v. Carmichael*,
    526 U.S. 137 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Leprino Foods Co. v. Factory Mut. Ins. Co.*,
    453 F.3d 1281 (10th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*McCoy v. Whirlpool Corp.*,
    2008 WL 2808927 (10th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Mitchell v. Gencorp, Inc.*,
    165 F.3d 778 (10th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 21

*Salgado v. General Motors Corp.*,
    150 F.3d 735 (7th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Staley v. Bridgestone/Firestone, Inc.*,
    106 F.3d 1504 (10th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Sylla-Sawdon v. Uniroyal Goodrich Tire Co.*,
    47 F.3d 277, 284 (8th Cir.), *cert. denied*, 516 U.S. 822 (1995). . . . . . . . . . . . . . 11

*Texas Eastern Transmission Corp. v. Marine Office-Appleton & Cox Corp.*,
    579 F.2d 561 (10th Cir. 1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Torres-Arroyo v. Rullan*,
    436 F.3d 1 (1st Cir. 2006).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Werth v. Makita Elec. Works, Ltd.*,
    950 F.2d 643 (10th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Woodworker's Supply v. Principal Mut. Life Ins. Co.*,
    170 F.3d 986 (10th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

**Other Authorities**

Chamber Procedures,
    Stephen P. Friot, United States District Judge . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Fed. R. Civ. P. 26.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 6, 11, 13, 14

Fed. R. Civ. P. 37.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 15

Fed. R. Evid. 402.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Evid. 403.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 24, 25

Fed. R. Evid. 702.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6, 19

Fed. R. Evid. 802.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

### DEFENDANT NORTH STAR MUTUAL INSURANCE COMPANY'S *DAUBERT* MOTION TO STRIKE TOM MILLER'S TESTIMONY, OR IN THE ALTERNATIVE, SECOND MOTION *IN LIMINE*

Pursuant to FED. R. CIV. P. 26 and 37, FED. R. EVID. 402, 403, 702 and 802, and the standards set forth by the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Defendant, North Star Mutual Insurance Company ("North Star" or "Defendant"), respectfully requests the Court enter an order striking the testimony of Plaintiff, Maverick Mart, LLC's, ("Plaintiff"), structural engineering expert, Tom Miller ("Miller"). Alternatively, North Star requests the Court enter an Order prohibiting Plaintiff from soliciting testimony from Miller regarding: (1) code compliance criteria; (2) the property's current condition (*i.e.* the condition of the roofing systems, etc.) is a result of the subject hail/wind storm; and, (3) which party has the burden of proof in an all-risk policy.

### BACKGROUND

This case arises out of a dispute over the value of a property damage claim Plaintiff submitted to North Star after a hail storm that purportedly occurred on May 31, 2013 (the "subject storm"). According to Plaintiff's owner, Mirza Beg ("Beg"), he noticed water stains on the interior ceiling within months of the subject storm. Although the policy states that an insured must give "prompt notice of the loss," Plaintiff did not notify North Star of the alleged damage. Instead, Plaintiff purportedly hired an individual, Mike Brown ("Brown"),

1

to perform repairs to the Property.[1]  Beg has testified that, after a period of time, Brown eventually repaired the leaks.  Presently, Beg is unaware of any leaks.

In approximately October 2013, InsuranceBusters.net ("IBN"), a public adjusting firm based out of Texas, solicited Plaintiff's business by leaving a business card at Plaintiff's property.  Beg contacted IBN and spoke with its owner Cal Spoon ("Spoon").  Without inspecting the property, Spoon represented to Beg that Plaintiff could submit a claim to its insurer and recover insurance benefits.  Two months later, or on December 26, 2013, Plaintiff entered into a contract with IBN. In February 2014, or two months after Plaintiff entered into a contract with IBN, a notice of loss was submitted to North Star.  At that time, neither Spoon nor anyone else from IBN had inspected the property.

Upon receipt of the notice, North Star promptly hired Meridian Claims Service, LLC, ("Meridian") to assist in the adjustment of the claim.  Meridian notified IBN that it had been hired to assist with Plaintiff's claim and requested a date that it could inspect Plaintiff's property.  The Policy states that Plaintiff must make the property available for inspection as often as reasonably required.  But, Plaintiff, through IBN, informed Meridian that the IBN repair estimate had not been completed, and therefore, Meridian could not inspect the property.

On March 24, 2014, a month after the claim was submitted, Spoon, for the first time, inspected the property.  Although IBN demanded a copy of the relevant Policy and

---

[1]Despite North Star's request for documentation demonstrating any repairs that were performed before and after the subject storm, Plaintiff has not produced any documentation supporting Beg's claim.  Thus, it is possible the alleged repairs were made before the subject storm or that the repairs were never actually performed.

Declarations Page, Spoon did not review them to determine what was covered under the Policy or what Plaintiff's obligations under the Policy were.  On March 25, 2014, IBN provided North Star its damage estimate.  The estimate included numerous items that were not covered under the Policy.  The estimate also included numerous repairs that appeared to be excluded under the terms and conditions of the Policy.

On April 1, 2014, Meridian was finally allowed access to inspect the Property.  Spoon was present during the inspection.  But, when Spoon disagreed with the Meridian adjuster over the cause and extent of damage, Spoon left the inspection, leaving the Meridian adjuster on the roof to complete the inspection by himself.  Meridian completed its inspection and determined there were signs of hail damage.  Meridian gave Plaintiff the benefit of the doubt as to the cause of the observed damage.  North Star then hired Ralph Thomas ("Thomas"), of TRC Disaster Solutions, to provide a repair estimate.

Thomas returned a repair estimate in the amount of $69,407.68 (again, giving Plaintiff the benefit of the doubt as to the cause of the observed damage).  Based upon this estimate and Meridian's recommendation, North Star promptly tendered an ACV payment in the amount of $47,117.89 ($69,407.68 [RCV] less the $5,000.00 deductible and $17,229.79 in recoverable depreciation). Plaintiff deposited the funds in its operating account.  Plaintiff did not use the funds to repair the property.  Apparently dissatisfied with the ACV payment, Plaintiff, through its attorneys, hired a general contractor, Vertex Roofing & Construction, LLC ("Vertex"), to perform a second inspection.  Vertex prepared a second, higher estimate.

Vertex's estimate claimed $299,707.47 in damages.  Plaintiff then demanded North Star pay the full value of the Vertex estimate or it would formally serve North Star with this lawsuit.[2]

Upon receipt of Plaintiff's demand, North Star requested an Examination Under Oath ("EUO") of Plaintiff's owner.  North Star hoped an EUO would provide Plaintiff an opportunity to articulate the basis of its demands and resolve this matter amicably without the court's involvement.  During Beg's EUO, it became clear that he could not articulate the basis of Plaintiff's demands.  North Star was informed that Plaintiff had not used any of the funds paid to it to perform the recommended repairs.  Rather, Plaintiff wanted North Star to tender an RCV payment without requiring Plaintiff to perform the recommended repairs.  During the course of this litigation, Plaintiff named Miller as an expert.

Miller is a structural engineer from Tampa, Florida.  (*See generally*, Miller Report, **EXHIBIT 1**.)  Miller's experience and expertise as a testifying expert is primary related to "Florida sinkhole cases." (*See* Miller Expert Witness History, pp. 1-12, **EXHIBIT 1**.) Despite his lack of experience as a hail damage expert, Plaintiff's counsel has retained Miller to act as an expert in a number of "hail damage cases" that have been filed in the state of Oklahoma. (*See* T. Miller Depo. Tr., 7:2-16, **EXHIBIT 2**.)  When Miller was retained as an expert in these cases, he did not hold an Oklahoma professional engineering license.  (*See* T. Miller Depo. Tr., 32:14-34:7, **EXHIBIT** _.)  In fact, when Miller inspected the Property in this case, he was acting under a temporary license.  (*See* T. Miller Licensing Information,

---

[2]Plaintiff filed suit on May 19, 2014, weeks after North Star tendered the ACV payment.

EXHIBIT 3.)   Miller's license was not issued until September 2, 2015.  (*See* T. Miller

Licensing Information, EXHIBIT 3.)

ARGUMENTS AND AUTHORITIES

**PROPOSITION I:  MILLER'S REPORT DOES NOT COMPLY WITH RULE 26's DISCLOSURE REQUIREMENTS.**

Pursuant to FED. R. CIV. P. 26(a)(2)(B), an expert witness report must include the

following:

> (I)   a complete statement of all opinions the witness will express and the basis and reasons for them;

> (ii)   the facts or data considered by the witness in forming them;

> (iii)   any exhibits that will be used to summarize or support them;

> (iv)   the witness's qualifications, including a list of all publications authored in the previous 10 years;

> (v)   a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

> (vi)   a statement of the compensation to be paid for the study and testimony in the case.

FED. R. CIV. P. 26(a)(2)(B)(I)-(vi).

"The proponent of the testimony of an expert is obligated to provide a report from the

expert complying **fully** with the[se] requirements . . ."  *Dixie Steel Erectors, Inc. v. Grove

U.S., L.L.C.*, CIV-04-390-F, 2005 WL 3558663, at *6 (W.D. Okla. Dec. 29, 2005) (emphasis

added).  Failure to do so may result in the court disallowing a party to use the expert's

testimony at trial. *See* FED. R. CIV. P. 37(c)(1).  In other words, the "combined effect" of

these rules "is that he who fails to provide a comprehensive expert report does so at his

5

peril." *Anderson v. Hale*, CIV-02-0113-F, 2002 WL 32026151, at *2 (W.D. Okla. Nov. 4, 2002).

The expert's report is a sufficient basis, standing alone, to determine whether the expert's testimony is admissible under the standards set forth by Rule 702 and *Daubert*. *See* Chamber Procedures, Stephen P. Friot, United States District Judge.

In this case, Miller begins his "Report" with an introduction and a brief description of the documents and information that he purportedly reviewed in preparing his opinions for this lawsuit.[3] However, during Miller's deposition, it became clear that Miller relied on documents and information not disclosed in his expert report. For example, Miller testified that he reviewed Beg's deposition and apparently conducted a short interview with Beg. (*See* T. Miller Depo. Tr. 65:7-11; 65:20-68:25, **EXHIBIT 2**.)

Miller's report then offers his "relevant comments" related to SEI's inspection of the Property. These "comments" are nothing more than a bullet pointed list of naked conclusions and speculation. Miller does not disclose the "basis and reasons for them" or the "facts or data considered . . . in forming them." FED. R. CIV. P. 26(a)(2)(B)(I)-(iv); *see also Indiana Ins. Co. v. Hussey Seating Co.*, 176 F.R.D. 291, 294-95 (S.D. Ind. 1997) (stating it is not enough for a party to produce documents that may support an expert's opinions in discovery;

---

[3]It is worth noting in his introduction, Miller discloses that Donnie Seburg, Plaintiff's general contracting expert, was present during his inspection and contributed to formulating Miller's opinions. (*See* Miller Report, pp. 1 & 4, **EXHIBIT 1**.) Miller also testified that Seburg actively participated in this inspection. (*See* T. Miller Depo. Tr. 95:25-96:2, **EXHIBIT 2**; T. Miller Depo. Tr., *Metro Mart, Inc. v. North Star*, 14-cv-01210-F, 53:22-55:6, **EXHIBIT 4**; Miller Report, p. 7 , **EXHIBIT 1**.) But, Seburg failed to disclose this inspection in his Rule 26 report.

the expert must prepare a single concise report).  For example, Miller writes, without explanation, "[w]ithin a reasonable professional probability wind, flying debris, and/or hail from the storm on or about May 31, 2013, caused [sic] damage to the roll roofing.  Ponding was noted on the roof at the main building."

Miller altogether fails to describe the damage he is referring to.  The parties and the court is left guessing the extent of the damage Miller is attributing to the May 31, 2013 storm.  The parties are also left guessing why he concludes "within a reasonable professional probability" the May 31, 2013, storm caused the alleged damage.  Further, the parties are left guessing whether Miller believes the ponding was caused by the subject storm, or if that is simply a side note to justify Seburg's belief that code upgrades are necessary.

During Miller's deposition, it became clear why his report failed to include the reasons and bases for his opinion.  Miller did not bother to determine the actual cause of the damage he observed.  He simply concluded that there was damage and the subject storm *may be* a cause of *some of* the claimed damage. (*See* T. Miller Depo. Tr. 104:11-105:19; 108:18-110:20; 112:6-17; 118:1-119:12, **EXHIBIT 2**.)  Miller even admits that the ponding he observed may have been caused by other factors, such as defects in workmanship, defective construction or normal wear and tear.  (*See* T. Miller Depo. Tr. 131:20-132:11, **EXHIBIT 2**.) In short, it not enough to see damage and jump to the conclusion the May 31, 2013, storm caused the damage.  Miller must be able to articulate why he believes the damage was caused by the storm.  And, as a causation expert, Miller must do more than rely on simple "probability."

Next, Miller states that "damage to the main store building was noted in the following locations." From this he concludes the subject storm "caused damage to the following areas: Roof cap, A/C units, [and] exterior walls." Again, Miller does not describe the damage observed. Miller does not explain the extent of the damage observed. Miller does not describe the test used to determine the cause of the damage. Further, Miller does not provide any indication as to the condition of the building before the subject storm. Given the fact that Beg does not know the condition of his Property before the storm (*See* M. Beg Depo. Tr. 33:15-33:4; 34:5-7; 34:17-20; 35:6-9; 38:14-19; 38:20-25; 39:9-17; 44:9-15; 53:6-54:13; 54:22-25; 55:4-7, **EXHIBIT 5**), it is reasonable to assume Miller has no knowledge of the condition of the Property before the storm.

This, of course, causes one to ask: how can Miller determine the subject storm caused any of the alleged damage if he cannot establish the condition of the Property before the storm? Because Miller's report does not provide any details for the reasons and bases for his conclusions, this important question is left unanswered. More importantly, North Star was forced to depose Miller to fill in the gaps in his report. In doing so, North Star learned that Miller's conclusions were based on nothing more an off-the-cuff "statistical" analysis. Miller testified:

> Q. That is your opinion and I appreciate that and I respect that. What I am trying to find out now is, what are the factual bases of that opinion. Do you understand what I'm asking?
>
> A. The fact that there is hailstorm damage up at that roof at that time, based off of everything that was collected, that includes the homeowner interview, the meteorological reports, and then my inspection, leads me to an engineering opinion within a

reasonable degree of probability **that there is some of the damage as a result of that storm.**

(*See* T. Miller Depo. Tr. 119:14-24, **EXHIBIT 2** (emphasis added); *see also* T. Miller Depo.

Tr., 112:6-17, **EXHIBIT 2**.)

Miller further testified:

Q. What was it that the insured said that enabled you to determine that this hail strike was related to this storm but another hail strike 12 inches over was not related?

A. I didn't come to that conclusion.

Q. Did you -- well, I thought that's what we have been saying.

A. No. We said that at least one of those two hail strikes -- using your example, and I want to use one or two. I am saying you look at an air conditioner that is riddled with hail impacts, then you say some of those impacts are a result of that storm.

Q. Because hailstorms usually produce hail impacts, correct?

A. That is correct.

Q. So, statistics would suggest that some of those hail strikes are related to this storm; is that what you are saying?

A. That's part of it, yes.

Q. And statistics, particularly applying the fact that Oklahoma is well-known for its hailstorms, would suggest that other hail strikes are unrelated to the hailstorm of May 31, 2013, agreed?

A. Agreed, yes.

**Q. But you can't say this one is and that one isn't, right?**

**A. That is correct.**

(*See* T. Miller Depo. Tr. 120:19-121:5, **EXHIBIT 2**.)

9

As previously noted, in his Report, Miller states, without qualifications or limitations, the May 31, 2013 storm caused damage to the main store building exterior.  But, his testimony makes it clear that Miller did not make any effort to confirm this conclusion.  Rather, he just assumes that because there was a storm, some of the damage observed – he does not know how much – was caused by the subject storm.

Miller continues stating "water leaks were noted in the interior of the main building." Based upon this observation, Miller concludes that "[w]ithin a reasonable professional probability, wind, flying debris, and/or hail from a storm which occurred on or about May 31, 2013, caused or exacerbated damage to the main store building interior."  Again, Miller's comment is utterly void of details regarding the reasons and bases for his conclusion.  This is not surprising considering in another deposition Miller admitted that he could not determine the age of the stains on the ceiling tiles by looking at the damage.  (*See* T. Miller Depo. Tr., *Metro Mart, Inc. v. North Star*, 14-cv-01210-F, 73:19-23, **EXHIBIT 4**.)  It appears Miller merely accepted Plaintiff's statement as true without further investigation.  This is not enough.  *See Ebonie S. v. Pueblo School District 60*, 2011 WL 1755208 (D. Colo. 2011) (stating "an expert's opinion based solely on the self-serving statements of an  interested party may be excluded for lack of foundation" (citing *Mooring Capital Fund, L.L.C. v. Knight*, 388 F.App'x 814, 821 (10th Cir. 2006)) "How" and "why" he believes the storm exacerbated the problem is left unanswered.

The remainder of Miller's "comments" are almost identical.  He notes that damage was observed.  And, he opines, without explanation, that "[w]ithin a reasonable professional probability, wind, flying debris, and/or hail from a storm which occurred on or about May

31, 2013, caused  damage [to the property]."  Miller's omissions are not a simple oversight. As a result of Miller's failure to disclose the reasons and bases for his opinions, the parties and the court do not know what facts he relied upon, let alone the test(s) performed to come to his conclusions.

The primary dispute in this matter is the cause and extent of the alleged damage to Plaintiff's Property.  As Plaintiff's causation expert, Miller must do more than agree with Plaintiff's alleged damage. Miller must explain "how" and "why" the damage was caused by the subject storm.  Under Rules 26 and 37, North Star should not have been required to incur the costs to depose Miller, including the costs of traveling to Tampa, Florida, to learn the reasons and bases, or lack thereof, for his "comments" and "conclusion."  *See Salgado v. General Motors Corp.*, 150 F.3d 735, n. 6 (7th Cir. 1998) ("The report must be complete such that opposing counsel is not forced to depose an expert in order to avoid ambush at trial; and moreover the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources."); *Sylla-Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 284 (8th Cir.), *cert. denied*, 516 U.S. 822 (1995).

In determining whether to strike evidence as a result of a party's violation of Rule 26(a)(2), the Court is to apply the four factors set out in *Woodworker's Supply v. Principal Mut. Life Ins. Co.*, 170 F.3d 986 (10th Cir. 1999).  These factors are:

1. The prejudice or surprise to the party gain whom the testimony is offered.

2. The ability of the party to cure the prejudice.

3. The extent to which introducing such testimony would disrupt the trial.

4.  The moving party's bad faith or willfulness.

*Id.* at 993.   Here the *Woodworker's Supply* factors favor striking Miller's Report and testimony.

**A.      *Prejudice.***

The purpose of the amended Rule 26 disclosures requirements is to reduce the length of expert depositions "'and in many cases the report may eliminate the need for a deposition.'" *Dixie Steel Erectors, Inc.*, 2005 WL 3558663, at *6 (quoting The Advisory Committee Notes on the 1993 Amendments to the Federal Rules of Civil Procedure).  "[T]he report rendered by the proponent of expert testimony may be regarded by the opposing party as a reliable and definitive statement staking out the four corners of the field on which the expert contest will unfold and providing a statement of the contentions which must either be conceded, deflected or rebutted."  *Id.* at *9.

In order to comply with the Court's Scheduling Order, North Star and its experts were entitled to look to Miller's report as a definitive statement outlining Miller's proposed testimony and the bases therefor.  After reviewing the report provided by Miller, North Star's expert, Mike Berryman ("Berryman"), inspected the property.   Berryman properly and reasonably opined "[t]he conclusions formed by Miller lack proper basis and foundation." (*See* M. Berryman Report, p. 12, **EXHIBIT 6**.)

On November 2, 2015, Miller was deposed.  At that time, North Star learned Miller had not concluded his work on this matter.  Specifically, he performed a second inspection of the property in October 2015. This second inspection was triggered by Berryman's

criticism of Miller's Report and the conclusions contained therein.  (*See* T. Miller Depo. Tr., 37:24-38:19, **EXHIBIT 2**.) Miller then attempted to justify his second inspection stating:

> Q. So, I go back to my question then. Why did you conduct additional inspections of Maverick Mart and Metro Mart in October?
>
> A. One of the things that we do that's consistent is that the standard of care which I would apply if I were working for an insurance company or an insured or their representative, I do the same. So, to the extent to do the best job that I can, I thought it was appropriate to go back and gather that information and that's what we did.

(T. Miller Depo. Tr. 38:23-39:7, **EXHIBIT 2**.)

Of course, if Miller's Report consisted of his ***complete*** and ***final*** opinions, there should have been no need to perform a second inspection to gather additional evidence/information to support his opinions.  This alone demonstrates the prejudice caused by Miller's failure to comply with Rule 26.  North Star was forced to incur the substantial expense of deposing Miller to ferret out the reasons and bases for his opinions, only to learn that he was still performing inspections and investigations to gather evidence supporting the opinions previously proffered.

Because North Star was not provided this information up front, it was not able to properly prepare for Miller's deposition.  Further, North Star is now left wondering whether Miller will perform a third inspection after he receives a copy of Berryman's deposition transcript.  In short, North Star has no idea if Miller's opinions are truly final or what he intends to tell the jury.  Thus, North Star has been severely prejudiced.

**B.**  *Ability to Cure.*

Based upon Miller's testimony, it is clear his report was nothing more than a place holder.  The "report" was submitted to place Plaintiff and Miller in a position to review North Star's expert's report and decide what areas Miller needed to focus on to make Plaintiff's case.  As shown above, after receiving Berryman's report, Miller performed a second inspection to gather evidence supporting his opinions.  Miller did not, however, supplement his report after his second inspection, as required by Rule 26.  *See* FED. R. CIV. P. 26(e)(2).  Further, North Star was not provided an opportunity to re-inspect the property to determine whether the new information Miller learned needed to be conceded, deflected or rebutted.

Miller's decision to ignore the requirements of Rule 26, whether an intentional tactic or a result of a "casual attitude" toward Rule 26 expert disclosures cannot be cured now.  The fact that Miller was still gathering evidence to confirm his opinions a month after submitting his expert report only emphasizes this fact.  At this time, the only potential cure is a new round of expert work, with new reports, new depositions and new *Daubert* motions.  However, as this Court recognized in *Dixie Steel Erectors, Inc.*:

> [T]hat approach would throughly undermine the legitimate expectations of the parties, to say nothing of the policies embedded in Rules 1 and 26(a), FED. R. CIV. P., all of which is also aside from the impact that approach would have on the court's ability to manage this litigation and the other cases on its docket in a just and orderly manner.

*Id.* at *9.

14

### C.     *Disruption of Trial.*

Plaintiff's failure to comply with Rule 26 is being addressed before trial.  Thus, there is no disruption of "the trial."  This fact is not an issue.  That being said, as discussed above, Miller's violation of Rule 26 creates a significant disruption in the pretrial process.

### D.     *Bad Faith or Willfulness.*

The Court is not required to make a finding of subject bad faith to strike Miller's report and testimony.  *See Dixie Steel Erectors, Inc.*, 2005 WL 3558663, at *10.  According to his *Curriculum Vitae*, Miller has worked as an expert in numerous cases throughout the country.  By appearing at the scheduling conference, Plaintiff's counsel confirmed that they had familiarized themselves with the Court's Chamber Procedures and understood the Procedures, including the Court's emphasis on Rule 26 expert reports.

These Rule 26 violations are clear and substantial.  Any argument that the violations were inadvertent or unavoidable misfortune is without merit.  Miller had sufficient time to investigate the matter and prepare a ***complete*** report.  Miller's failure to include the reasons and bases for his opinions, as well as his failure to supplement his report, completely undermines the purpose of expert disclosure and should not be tolerated by this Court. Therefore, his report and testimony should be stricken pursuant to FED. R. CIV. P. 37(c).

**PROPOSITION II:          MILLER'S TESTIMONY IS NOT RELEVANT**

Even if the Court determine's Miller's Report complies with Rule 26(a)(2), the Court's inquiry does not end there.  The "[e]xpert testimony must be both relevant and reliable to be admissible."  *McCoy v. Whirlpool Corp.*, 2008 WL 2808927, at *2 (10th Cir.

2008) (citing *Daubert*, 509 U.S. at 589, 594-95).  The threshold inquiry in any dispute over the admissibility of evidence is whether the evidence is relevant." *Black v. M&W Gear Co.*, 269 F.3d 1220, 1227 (10th Cir. 2001) (citing *Coletti v. Cudd Pressure Control*, 165 F.3d 767, 777 (10th Cir. 1999)).

"The district court must act as the 'gate keeper' with respect to proffered expert testimony to ensure that it meets both of these requirements." *Id*. (citing *Daubert*, 509 U.S. at 589).  If Miller's testimony is not relevant, then it is inadmissible no matter how reliable it may be.  *See* FED. R. EVID. 402.  As a proposed expert, Miller's testimony is not relevant if his opinion fails to assist the trier of fact in understanding and determining a fact in issue. *Werth v. Makita Elec. Works, Ltd.*, 950 F.2d 643, 648 (10th Cir. 1991) (stating that under Rule 702, "the 'touchstone' of admissibility is helpfulness to the trier of fact").  Here, Plaintiff cannot show Miller's testimony is relevant.

First and foremost, during his deposition, Miller admitted that his testimony is not necessary to assist the trier of fact in understanding and determining a fact in issue.  Miller testified:

> Q.  Do we need a structural engineer like you with all your qualifications to tell us those are hail strikes?

> A.  I would think not, no.

(T. Miller Depo. Tr., 111:8-11, **EXHIBIT 2**.)

In another case Plaintiff's counsel filed against Defendant, Miller testified:

> Q.  For you to observe those hail strikes, do you believe it was necessary that Plaintiff retain a structural engineer?

16

A.  No.

(T. Miller Depo. Tr., *Metro Mart, Inc. v. North Star*, 14-cv-01210-F, 62:1-4, **Exhibit 4**.)

Second, summarizing Miller's report, he observed alleged hail damage at the Property and concluded the subject storm "cannot be eliminated as a cause of damage to the property[.]"  (*See* Miller Report, p. 1 & 8, **Exhibit 1**.)  As discussed above, Miller's report provides no reasons or bases for his conclusion.  At his deposition, Miller admitted that he could not state on an individual basis whether a hail strike was related to the subject storm.  (*See* T. Miller Depo. Tr. 109:21-110:20; 112:3-17; 118:1-119:12, **Exhibit 2**.)  He could only state that "statistically" at least some of the identified hail strikes were a result of the subject storm.[4]  (*See* T. Miller Depo. Tr. 120:19-121:5, **Exhibit 2**.)

But, Miller has also acknowledged that he would need additional information such as the density of the hail and the number of storms that have hit the Property since it was built.  (*See* T. Miller Depo. Tr., 114:2-23, **Exhibit 2**; T. Miller Depo. Tr., *Metro Mart, Inc. v. North Star*, 14-cv-01210-F, 61:17-24, **Exhibit 4**.)  Importantly, Miller also testified that the scope of his work was limited to determining whether the subject storm was a potential cause, not *the* cause of the alleged damage.  (*See* T. Miller Depo. Tr. 118:25-119:24, **Exhibit 2**.)  Because Miller did not investigate and rule out other potential causes for the

---

[4]As discussed below, Miller's claim that "statistically" at least some of the damage is related to the subject storm is insufficient to defeat a *Daubert* challenge.  Miller must actually explain the basis for the statement, *i.e.,* the information reviewed and the calculations performed to establish "statistically" *some* of the alleged hail damage was caused by the subject storm.

alleged damage, his testimony does not assist the trier of fact in determining the issues in this case: the extent of damage allegedly caused by the subject storm.

Additionally, during his deposition, Miller testified it is his understanding that the policy at issue is an "all-risk" policy.[5]  Miller is correct.  Under an all-risk policy, the burden is upon the insured to prove the loss occurred and that it was due to some fortuitous event or circumstances; the burden then shifts to the insurer to show that the loss was one excluded by the policy.  *Texas Eastern Transmission Corp. v. Marine Office-Appleton & Cox Corp.*, 579 F.2d 561 (10th Cir. 1978); *Leprino Foods Co. v. Factory Mut. Ins. Co.*, 453 F.3d 1281 (10th Cir. 2006).  Generally, if the insurer shows that an exclusion applies, the burden shifts back to the insured to prove the applicability of an exception to the exclusion.  *Leprino*, 453 F.3d at 1287.

Here, the policy also provides a number of exclusions that limit North Star's liability under the policy.  These exclusions include, but are not limited to, neglect, wear and tear, continuous or repeated seepage or leakage of water, and negligent work/maintenance.  (North Star Businessowners Coverage Form, pp. 16-20, MAVERICK/NS 0021-0025, **Exhibit 7**.)  Thus, Miller's opinions that the subject storm ***cannot be ruled out*** as a ***potential*** cause for ***some*** of the alleged damage is not helpful to the trier of fact.  North Star conducted a thorough investigation before this lawsuit was filed.  That investigation included hiring two independent adjusters/consultants to inspect the property.  Both adjusters/consultants

---

[5]North Star objects to any testimony Miller may provide regarding his opinions as to coverage under the subject policy.  Miller has not been listed as a coverage expert and testified that he has not read the relevant policy.  (*See* Plaintiff's Expert Witness List [Dkt. No. 37]; T. Miller Depo. Tr. 99:18-25; 117:22-25, **Exhibit 2**.)

concluded that a substantial portion of the damage claimed by Plaintiff was either non-existent or excluded under the terms of the policy.

During the course of litigation, North Star retained a local contractor, Berryman, as its expert. Berryman has substantial experience in the relevant industry. Berryman also has substantial experience in evaluating damage caused by the storms Oklahoma experiences. After performing a detailed inspection of the Property, Berryman confirmed the results of North Star's investigation. (*See generally*, Berryman Report, **EXHIBIT 6**.) In short, Plaintiff must show more than the subject storm is a ***possible*** cause of ***some*** of the claimed damage. Plaintiff must demonstrate the subject storm is the cause of the claimed damage. Miller admits he cannot provide this type of testimony. Thus, his testimony does not assist the trier of fact in determining a fact in issue. As such, his testimony must be stricken under Rule 702.

**PROPOSITION III:     MILLER'S TESTIMONY DOES NOT MEET THE *DAUBERT* STANDARD FOR RELIABILITY.**

In addition to determining whether an expert's testimony is relevant, the trial court is also tasked with determining whether an expert's testimony is reliable. "[A] trial court's focus generally should not be upon the precise conclusions reached by the expert, but on the methodology employed in reaching those conclusions." *Id*. "**[A]ny step that renders the analysis unreliable** . . . renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology." *Mitchell v. Gencorp, Inc.*, 165 F.3d 778, 783 (10th Cir. 1999) (emphasis added). This "flexible" inquiry is to be guided at the court's discretion in deciding not only how to

evaluate an expert's reliability, but in determining whether that expert's testimony is reliable. *Kumho Tire, Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).  The ultimate objective of course is "to make certain that an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.*

Under *Daubert*, "the expert's assurance of validity is not enough." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, (on remand), 43 F.3d 1311, 1316 (9th Cir. 1995), cert denied, 516 U.S. 869 (1995). The factors courts consider in determining whether an expert's testimony is reliable include:

1. Can the theme or technique be, or has it been, tested;

2. Has the theory or technique been subjected to peer review and publication;

3. Is there a "known or potential rate of error and the existence and maintenance of standards controlling the [technique's] operation;" and,

4. Is there widespread acceptance of the theory or technique within the relevant scientific community.

*Daubert*, 509 U.S. at 591.  *Daubert's* progeny provides additional factors that may be considered such as: whether the proposed expert ruled out other alternative explanations, or whether the proposed expert sufficiently connected the proposed testimony with the facts of the case.  *See Cantrell v. Davidson*, CIV-07-0623, 2008 WL 8809764, n. 3 (W.D. Okla. June 23, 2008) (citing FED. R. EVID 702 advisory committee's note (2000), and cases cited therein).

Proposed expert testimony must be supported by "appropriate validation - *i.e.*, 'good grounds,' based on what is known." *Daubert*, 509 U.S. at 590.  "[T]he plaintiff must show that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements." *Mitchell*, 165 F.3d at 781.  Said another way, North Star does not have to prove Miller's findings and opinions are inaccurate. Plaintiff must demonstrate the validity of Miller's findings and methodology. Here, Plaintiff cannot meet its burden.

## A.    *Miller's Testimony Does Not Satisfy the Four* Daubert *Factors.*

As shown above, Miller's report consists of nothing more than a bullet pointed list stating that he saw hail damage, some of which he believes may have been caused by the subject storm.  His report does not state how he arrived at his conclusions.  At his deposition, Miller confirmed he could not and did not determine what damage was actually related to the subject storm.  Rather, he simply concluded that "statistically" at least some of the alleged damage was caused by the subject storm. (*See* T. Miller Depo. Tr. 109:21-110:20; 112:3-17; 118:1-119:12, 120:19-121:5, **Exhibit 2**.)  Further, Miller admits he could not identify the percentage of hail strikes allegedly related to the subject storm.

Miller does not reference any reports or statistical tables demonstrating the percentage of hail storms in Oklahoma that result in damage to structures similar those at issue in this lawsuit.   Miller does not disclose any mathematical calculations that he relied upon/performed to determine the statistical correlation between the damage purportedly observed and the type, size and density of the hail that purportedly fell on the structure during

21

the subject storm.  In another case, Miller recognized this type of information would be helpful in determining the cause of the alleged damage.  (*See* T. Miller Depo. Tr., *Metro Mart, Inc. v. North Star*, 14-cv-01210-F, 61:17-24, **EXHIBIT 4**.)[6]  Simply stated, Miller provides no indication that his "statistical analysis"/"expert opinion" has been tested.  His opinions are verified by nothing more than his bald assurance of validity.  Miller's *ipse dixit* testimony does not pass muster under the *Daubert* standard.  *See General Electric Co. v. Joiner*, 522 U.S. 136, 146-147 (1997).

Next, Miller's known or potential rate of error is indeterminable and there has been no "acceptance" of his theories and/or methodology.  Miller does not disclose the test used to determine that some of the damage may have been cause by the subject storm.  Said another way, it is impossible to test the potential rate of error of Miller's off the cuff "statistical" analysis.  Miller's qualifications as a structural engineer alone does not make his opinion reliable.

**B.**     ***Miller Did Not Rule Out Other Alternative Explanations.***

In addition to the four factors set forth in *Daubert*, the Court may consider alternative factors, such as whether the proposed expert ruled out other alternative explanations.  Here, Miller admits that he did not rule out other explanations.  As shown above, he did not even try.  Rather, he merely determined the subject storm could be a cause of some of the alleged damage.

---

[6]For example, he acknowledges it is important to know the density of the hail because it directly affects the impact force of the hail.  (*See* T. Miller Depo. Tr., 128:10-13, **EXHIBIT 2**.)  But, Miller does not know the density of the hail that allegedly fell on the Property during the subject storm.  (*See* T. Miller Depo. Tr. 128:7-9, **EXHIBIT 2**.)

The issue in this case is not whether the subject storm **may have** caused **some** of the claimed damage.  The issue in this case is whether the subject storm caused the claimed damage.  Miller admits he did not make any effort to rule out alternative explanations for the alleged damage. Thus, his opinions do not meet the reliability requirement for expert testimony.  *See Cantrell,* 2008 WL 8809764, n. 3.

### C.    *Miller did not connect the proposed testimony with the facts of the case.*

It is clear that Miller spent very little time formulating his opinions in this matter.[7] Miller interviewed Beg.[8]  Miller's interview was extremely brief and limited.  Miller did not ask any questions regarding the condition of the property prior to the subject storm.  While Miller's Report indicates he pulled a BuildFax report on the Property, Miller acknowledges the BuildFax report only indicates whether building permits were obtained for repairs performed.  Thus, if the Property owner did not apply for a building permit or did not need a permit for the work performed, the repairs would not be documented.[9]  (*See* T. Miller Depo. Tr., 125:15-25, **Exhibit 2**.)  Thus, the BuildFax report provides little insight into the buildings' conditions before the subject storm.  Miller's Report as well as his testimony makes it patently clear that Miller did not make any effort to determine the actual cause of the alleged damage.  Miller's testimony should be excluded.

---

[7]North Star is not suggesting Miller did not spend time inspecting the Property or preparing his report.  Rather, North Star asserts Miller spent little time performing the necessary research to come to his conclusions.

[8]Miller's interview with Beg was not disclosed in his report.

[9]For example, Beg claims the property was repaired by Mike Brown.  But, the BuildFax report does not mention the alleged repairs.

**PROPOSITION IV:**       **MILLER'S   TESTIMONY   SHOULD   ALSO BE EXCLUDED PURSUANT TO FED. R. EVID. 403.**

Even if Plaintiff can show Miller's testimony satisfies the requirements of Rule 401, the admissibility inquiry does not end there.  Rule 403 provides that even relevant evidence may still be excluded.  *See* FED. R. EVID. 403.  In fact, "[r]elevancy . . . is a condition precedent to admissibility, not an ironclad guarantee of admissibility." *Torres-Arroyo v. Rullan*, 436 F.3d 1, 7 (1st Cir. 2006).  "Once relevance has been determined . . ., the district judge must balance the probative value of and the need for the evidence against the harm likely to result from its admission." *Staley v. Bridgestone/Firestone, Inc.*, 106 F.3d 1504, 1512 (10th Cir. 1997) (internal citations and quotations omitted).

As shown above, Miller's testimony has very low probative value, but a high potential for prejudice and inexpediency.  For example, Miller testified that it was his understanding Seburg's opinions/estimates as a general contractor would be based upon Miller's damage assessment.  But, as shown in North Star's *Daubert* Motion to exclude Seburg's testimony, Seburg prepared his estimate more than a year before Miller inspected the Property.  (*See generally*, North Star's *Daubert* Motion to Exclude Seburg's testimony [Dkt. No. 57].)  It appears Seburg did not find Miller's opinions necessary to prepare his estimate.  Thus, Miller's causation testimony is duplicative.

Plaintiff's witness list also states Miller is expected to provide testimony related to "code compliance criteria relevant to this matter."  (*See* Plaintiff's Witness List [Dkt. No. 51].)  Miller testified that he was not asked to provide this type of testimony and his report does not include any reference to code compliance.  (*See* T. Miller Depo. Tr. 105:20-106:21,

EXHIBIT 2.)  From Seburg's report, it appears that Seburg also intends to provide testimony regarding building code upgrades.[10]  Again, Miller's proposed testimony is duplicative.  The danger of unfair prejudice and needless presentation of cumulative evidence substantially outweighs the probative value of Miller's testimony. Thus, Miller's testimony should be excluded pursuant to FED. R. EVID. 403.

## CONCLUSION

For the reasons set forth herein, the Defendant, North Star Mutual Insurance Company, respectfully requests the Court for an Order striking Miller's testimony. Alternatively, North Star requests the Court for an Order prohibiting Plaintiff from soliciting testimony from Miller as outlined above.

---

[10]As discussed in North Star's *Daubert* Motion to Strike Seburg's Testimony [Dkt. No. 57], North Star disputes the reliability of Seburg's opinions regarding causation and code upgrades.

25

Respectfully submitted,


s/ Erin J. Rooney
Gerard F. Pignato, OBA No. 11473
Erin J. Rooney, OBA No. 31207
PIGNATO, COOPER, KOLKER &
ROBERSON, P.C.
Robinson Renaissance Building
119 North Robinson Avenue, 11th Floor
Oklahoma City, Oklahoma 73102
Telephone:   405-606-3333
Facsimile:   405-606-3334
Email:       jerry@pclaw.org
             erin@pclaw.org
ATTORNEYS FOR NORTH STAR MUTUAL
  INSURANCE COMPANY


## CERTIFICATE OF SERVICE

I hereby certify that on November 30, 2015, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

J. Drew Houghton, Esquire
Phillip N. Sanov, Esquire
Larry Bache, Esquire


s/ Erin J. Rooney
For the firm

26